IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH THOMAS,

       Plaintiff,                No. CIV S-05-1243 MCE DAD P

   vs.

MANUEL MEDINA, et al.,

       Defendants.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding pro se with a civil rights action filed June 21, 2005.  Eight defendants have moved to dismiss the complaint pursuant to unenumerated Rule 12(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

BACKGROUND

      On June 28, 2005, the court determined that plaintiff's complaint appears to state cognizable claims against eleven defendants.  On October 17, 2005, plaintiff submitted the documents required for service of his complaint.  By order filed October 21, 2005, the court directed the United States Marshal to serve the defendants.

      The Marshal was unable to effect service on defendants Lathem, Krlsuh, and Adams but executed service on defendants Armstrong, Boone, Manuel, Medina, Peterson, Schievelbein, Shepherd, and Walton.  Pursuant to extensions of time granted by the court on

1   January 6, 2006, and February 10, 2006, the eight served defendants filed their motion to dismiss

2   on March 16, 2006.  Pursuant to extensions of time granted by the court on May 8, 2006, and

3   June 20, 2006, plaintiff filed his opposition to defendants' motion on July 10, 2006.  Defendants

4   have not filed a reply.

5                        PLAINTIFF'S CLAIMS

6        Plaintiff is presently confined at California State Prison, Solano.  His claims arose

7   at Folsom State Prison ("FSP"), where all defendants were employed at the relevant times and

8   where plaintiff was confined when he brought this action.

9        Plaintiff alleges a violent assault by prison staff, denial of medical care, and other

10   retaliatory conduct that occurred after he filed a staff complaint about an incident that occurred

11   on September 8, 2004.  On that date, his wife and two minor children were leaving FSP after an

12   overnight family visit when they were detained and interrogated by Officers Medina, Walton, and

13   Jones.  Plaintiff's wife requested that an attorney be present, but her request was denied and the

14   officers threatened to retaliate against plaintiff if she did not cooperate.  Plaintiff's children were

15   questioned without the consent of their mother and outside her presence.  On September 12,

16   2004, plaintiff submitted a staff complaint concerning the conduct of the three officers.

17        Retaliation began on November 5, 2004:  defendants Medina and Walton came to

18   plaintiff's cell, and defendant Medina assaulted plaintiff; defendant Medina told plaintiff they

19   would teach him "about writing paper on me and my partners"; when plaintiff called out for help,

20   defendant Medina began yelling about his knee and pretending plaintiff had assaulted and injured

21   him; plaintiff suffered facial injuries, a dislocated shoulder, and a dislocated finger; after the

22   assault, plaintiff was escorted to the program office; as plaintiff was escorted from the tier, he

23   saw Captain Manuel and Associate Warden Schievelbein approaching; plaintiff believes that

24   these two defendants were aware of the retaliatory intentions of defendants Medina and Walton

25   and permitted the assault to occur; an encounter with Correctional Officer Boone about an hour

26   after plaintiff was placed in a holding cage led plaintiff to believe that defendant Boone also

1    knew of the retaliatory plan and was participating in it; about two hours after plaintiff was placed

2    in the holding cage, defendants Medina and Walton came and taunted plaintiff; later, MTA

3    Lathem came to medically clear plaintiff for placement in the administrative segregation unit

4    ("ad seg"); plaintiff told defendant Lathem about his injuries and pleaded for immediate medical

5    attention, but defendant Lathem said he did not see anything wrong, despite plaintiff's visible

6    injuries, and told plaintiff that he would be seen by someone in ad seg the next day; defendant

7    Lathem cleared plaintiff for ad seg without providing any medical treatment and falsely

8    documented in the medical report that plaintiff had no visible injuries and that plaintiff said,

9    when asked what happened, that he had no idea; plaintiff believes that defendant Lathem was

10   participating in a cover-up of the injuries inflicted by defendant Medina.  (Compl. at 3-8.)

11            Plaintiff alleges the following additional retaliatory actions and continued denial

12   of medical care between November 5, 2004, and November 18, 2004, when he filed his first

13   inmate appeal concerning the events of November 5, 2004:  on November 8, 2004, plaintiff

14   appeared before defendant Manuel for an ad seg retention hearing; plaintiff complained about

15   lack of medical treatment and the retaliatory actions of defendants Medina and Walton;

16   defendant Manuel said she would stand by her officers and support their allegations no matter

17   what but said that she would send someone to video record plaintiff's complaint of excessive

18   force and promised she would call the staff physician so that plaintiff would receive medical

19   treatment that day; plaintiff did not receive medical treatment on November 8, 2004; on

20   November 9, 2004, plaintiff stopped MTA White as he was distributing medications in ad seg;

21   MTA White commented on plaintiff's visible facial injuries and swelling, provided plaintiff with

22   pain medication, accurately documented plaintiff's injuries, and said he would bring the matter to

23   the staff physician's attention and request that plaintiff be seen without delay; plaintiff was not

24   seen by any medical staff other than MTA White on November 9, 2004; on November 10, 2004,

25   Lieutenant Krlsuh video recorded plaintiff's allegations of excessive force but limited plaintiff to

26   details of the incident on November 5, 2004; in response to plaintiff's complaint concerning lack

3

1   of medical treatment, defendant Krlsuh promised to see what he could do; plaintiff did not

2   receive medical treatment on November 10, 2004; on November 11, 2004, defendant

3   Schievelbein interviewed plaintiff, stated that appropriate action would be taken about

4   defendants Medina and Walton, advised plaintiff not to worry about a disciplinary charge, and

5   promised medical treatment that day; plaintiff did not receive medical treatment on November

6   11, 2004; at a classification committee meeting on November 12, 2004, Warden Shepard

7   informed plaintiff that his complaint of excessive force had been referred to the appropriate

8   committee; defendant Shepard promised that plaintiff would receive medical treatment for his

9   still visible facial injuries and other injuries, but plaintiff did not receive medical treatment on

10  November 12, 2004; between November 5, 2004, and November 13, 2004, plaintiff mailed

11  several letters to his family about the assault and his injuries; plaintiff learned on November 14,

12  2004, that his family did not receive any of the letters; during that period of time, defendants

13  Medina, Walton, and Boone came to ad seg several times, taunted plaintiff for sending written

14  complaints to his family and prison officials, and asked plaintiff what he thought his people

15  could do or what he could do; plaintiff believes defendants Medina, Walton, and Boone

16  intercepted his letters and destroyed them; on November 15, 2004, plaintiff's mother called the

17  institution and complained about the denial of medical treatment for plaintiff; plaintiff was taken

18  to the clinic for treatment on November 15, 2004, ten days after he was assaulted; on November

19  16, 2004, plaintiff returned to the clinic for a review of x-ray results; as plaintiff was being seen,

20  defendants Walton and Boone entered the clinic and stood observing the medical consultation;

21  plaintiff believes their presence influenced the doctor to conduct a cursory examination and

22  downplay the seriousness of plaintiff's injuries.  (Id. at 8-13.)

23          Retaliatory conduct continued after plaintiff filed an inmate appeal on November

24  18, 2004, as follows:  on November 20, 2004, plaintiff and his cellmate received rule violation

25  reports; the cellmate was charged with resistive behavior, while plaintiff was charged with

26  battery on a peace officer; plaintiff requested that defendants Medina, Walton, Manuel, and two

4

1   additional correctional officers be interviewed and called as witnesses at the hearing; on

2   December 19, 2004, Lieutenant Adams found plaintiff's cellmate not guilty; at plaintiff's hearing

3   on the same date, defendant Adams refused to call any of the requested witnesses, falsely wrote

4   that plaintiff rescinded his request for witnesses, falsely wrote that plaintiff pled guilty, and found

5   plaintiff guilty of a lesser charge of resistive behavior; on December 28, 2004, defendant Adams

6   told plaintiff and his cellmate there was a contract out on them; plaintiff believes that defendant

7   Adams fabricated an alleged security threat in an effort to place plaintiff back in ad seg and to

8   prevent him from appealing defendant Adams' disciplinary decision; on December 30, 2004,

9   plaintiff appealed the disciplinary decision and requested a transfer; on January 4, 2005,

10  defendant Manuel threatened plaintiff with ad seg for filing grievances; on January 20, 2005,

11  Lieutenant Armstrong stopped plaintiff to ask him why he was still starting trouble; defendant

12  Armstrong then threatened plaintiff with a retaliatory transfer "three hundred miles down south"

13  for filing and pursuing grievances; plaintiff suffered repeated shoulder dislocations after

14  November 5, 2004, and was told by two different doctors that he needed an MRI and would

15  continue to suffer dislocations if he did not receive surgery; two doctors requested an MRI and

16  surgery for plaintiff, but the requests of both doctors were repeatedly denied by defendant

17  Peterson, the Chief Medical Officer.  (Id. at 13-18.)

18          By his complaint, plaintiff seeks transfer from FSP, arrangement for an MRI and

19  evaluation by a specialist, and treatment without delay in accordance with the specialist's

20  evaluation.  (Id. at 3 & 21.)  Plaintiff seeks both compensatory and punitive damages.  (Id. at 21.)

21          Plaintiff affirmatively alleges that he exhausted administrative remedies by

22  presenting the facts in his complaint in the inmate appeal dated November 18, 2004, No. 04-

23  1782.  Plaintiff alleges that the appeal was partially granted at the second level on December 10,

24  2004, and denied at the third level on March 15, 2005.  (Compl. at 1-2.)

25  /////

26  /////

1            DEFENDANTS' MOTION TO DISMISS

2  I.  Defendants' Arguments

3       A.  Failure to Exhaust Administrative Remedies

4              Defendants note that plaintiff's complaint was signed on June 8, 2005, and was

5  received for filing by the court clerk on June 21, 2005.  Defendants present evidence that plaintiff

6  filed four inmate appeals concerning claims alleged in this action and that only one of those

7  appeals was exhausted before plaintiff brought this suit.  Defendants assert that the only relevant

8  appeal is No. 04-1782, in which plaintiff alleged that defendants Medina and Walton searched

9  his cell on November 5, 2004, in retaliation for his prior complaint against them and that

10  defendant Medina used excessive force against him.[1]  (Def'ts' Mot. to Dismiss, Ex. A (Grannis

11  Decl.) ¶ 9; Ex. B (Hudson Decl.) ¶ 6 & Ex. 1 at 1-11.)

12             Defendants provide evidence concerning two additional appeals that were

13  exhausted to the third level after this action was filed.  In Appeal No. 05-003, plaintiff challenged

14  the rule violation report charging him with assault on a peace officer and his placement in ad seg;

15  he requested a transfer.  (Id., Hudson Decl., Ex. 2 at 12-44.)  The director's level decision on this

16  appeal was issued on June 23, 2005, after plaintiff brought this lawsuit.  (Id., Grannis Decl. ¶ 9;

17  Hudson Decl. ¶ 6.)  In Appeal No. 05-197, plaintiff appealed defendant Adams' decision on the

18  rule violation report and alleged due process violations.  (Id., Hudson Decl., Ex. 3 at 45-137.)

19  The director's level decision on this appeal was issued on July 11, 2005, after plaintiff brought

20  this lawsuit.  (Id., Grannis Decl. ¶ 9; Hudson Decl. ¶ 6.)

21             Defendants also provide evidence of an appeal plaintiff filed but did not exhaust

22  beyond the second level of review.  In Appeal No. 05-229, plaintiff claimed lack of medical care

23  and denial of medical services, including MRI and surgery.  He did not present this appeal to the

24  director's level for review.  (Id., Hudson Decl. ¶ 6 & Ex. 4 at 138-47; Grannis Decl. ¶ 9.)

25  _____

26        [1]  Appeal No. 04-1782 is the appeal cited in plaintiff's complaint as the grievance that
exhausted the facts alleged in his complaint.  (Compl. at 1-2.)

6

Defendants seek dismissal of the following claims on the ground that they were not raised in the inmate appeal plaintiff exhausted before he brought this suit: (1) the claim that defendant Medina filed a false report against plaintiff; (2) the claims that defendants Manuel and Schievelbein failed to protect plaintiff from retaliation and excessive force on November 5, 2004; (3) the claim that defendant Armstrong threatened and harassed plaintiff; (4) the claim that defendant Peterson was deliberately indifferent to plaintiff's medical needs by not approving treatment.

B. Failure to State a Claim

Defendants seek dismissal of the following claims on the ground that these claims fail to state cognizable claims: (1) plaintiff's claims that defendants Armstrong, Adams, Boone, Manuel, and Walton threatened and harassed him; (2) plaintiff's claims that defendants Manuel and Schievelbein are liable in their supervisory capacity for the acts of retaliation and excessive force; (3) plaintiff's claims of deliberate indifference to medical needs by defendants Manuel, Schievelbein, Krlsuh, Shepard, Boone, Medina, Walton, and Peterson; and (4) plaintiff's claims of conspiracy, to the extent that plaintiff alleges the defendants engaged in a conspiracy.

II. Plaintiff's Opposition

With regard to exhaustion of administrative remedies, plaintiff asserts that he seeks monetary compensation for injuries, and prisoners seeking only monetary damages need not exhaust administrative remedies. He contends that he exhausted his first inmate appeal, alleging excessive force by defendants Medina and Walton, and that all subsequent inmate appeals were filed merely to prevent reprisals by other staff and to obtain monetary damages, "which would not require the exhaustion of state administrative remedies."

Plaintiff also argues that prisoners are not required to exhaust an appeal if the appeal has been granted in part and that, having exhausted Appeal No. 04-1782, in which he was told at the director's level that requests for disciplinary action against staff members and requests for monetary compensation are beyond the scope of the appeal process, it would have been futile

1   for him to pursue disciplinary action and monetary compensation in additional appeals against

2   other staff members.  Plaintiff concludes that all of his claims were fully exhausted.

3            Plaintiff offers copies of the same four appeals provided by defendants.  (See Pl.'s

4   Opp'n, Exs. C (Appeal No. 04-1782), D (Appeal No. 05-003), E (Appeal No. 05-197), and H

5   (Appeal No. 05-229).)  In addition, he provides a copy of an appeal concerning property lost or

6   damaged in the cell search on November 5, 2004.  (Id., Ex. A (Appeal No. 05-035).)  With regard

7   to Appeal No. 05-197, plaintiff disputes defendants' contention that he did not exhaust the appeal

8   before bringing suit.  He asserts that Appeal No. 05-197, concerning the disciplinary decision,

9   "was forwarded to the Director's level and fully exhausted on 6-19-05."  Plaintiff's Exhibit E

10  shows that plaintiff is mistaken.  The appeal was decided on July 11, 2005, i.e., 7-11-05, after

11  plaintiff signed his civil rights complaint and after it was filed.

12           With regard to dismissal for failure to state a claim, plaintiff addresses issues of

13  proof and the merits of his claims.

ANALYSIS

14

15  I.  Defendants' Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

16       A.  Legal Standards

17           By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42

18  U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

19  under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

20  prison, or other correctional facility until such administrative remedies as are available are

21  exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

22  prison life, whether they involve general circumstances or particular episodes, and whether they

23  allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

24           The Supreme Court has ruled that exhaustion of prison administrative procedures

25  is mandated regardless of the relief offered through such procedures.  Booth v. Churner, 532 U.S.

26  731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into

1   the statutory exhaustion requirement.  Id. at 741 n.6.  Because proper exhaustion is necessary, a

2   prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

3   procedurally defective administrative grievance or appeal.  Woodford v. Ngo, ___ U.S. ___, 126

4   S. Ct. 2378, 2382 (2006).

5           In California, state regulations permit prisoners to appeal "any departmental

6   decision, action, condition, or policy which they can demonstrate as having an adverse effect

7   upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Most appeals progress from an

8   informal review through three formal levels of review.  See Cal. Code Regs. tit. 15, § 3084.5.  A

9   decision at the third formal level, also referred to as the director's level, is not appealable and

10  will conclude a prisoner's administrative remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and

11  3084.5(e)(2).  A California prisoner is required to submit an inmate appeal at the appropriate

12  level and proceed to the highest level of review available before filing suit.  Butler v. Adams, 397

13  F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

14          The PLRA requires prisoners to use the administrative process that the state

15  provides but does not require more.  Butler, 397 F.3d at 1183 (reversing the district court's

16  dismissal of defendants not named in the prisoner's inmate appeal because the form at issue "did

17  not require identification of any specific persons").  "A prison appeal need not name each

18  defendant named in a subsequent federal action as a matter of law."  Tillis v. Lamarque, No. C

19  04-3763 SI, 2006 WL 644876, at *4 (N.D. Cal. Mar. 9, 2006) (finding that the CDC 602 inmate

20  appeal form "does not require anyone to be named").  See also Lewis v. Mitchell, 416 F. Supp.

21  2d 935, 941-42 (S.D. Cal. 2005) (holding that the CDC 602 inmate appeal form does not require

22  an inmate to name or identify specific persons and adopting the magistrate judge's finding that

23  the inmate sufficiently exhausted administrative remedies as to all defendants even though only

24  two defendants were named in the inmate appeal).

25          The PLRA exhaustion requirement creates an affirmative defense that a defendant

26  may raise in a non-enumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d 1108, 1117-19 &

nn.9 & 13 (9th Cir. 2003). The defendant bears the burden of raising and proving the absence of exhaustion. 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."[2] Id. at 1120 n.14.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) (holding that a total-exhaustion rule is not mandated by the PLRA), petition for cert. filed, 74 U.S.L.W. 3425 (Jan. 6, 2006) (No. 05-878). If the unexhausted claims are not intertwined with the properly exhausted claims, the court should dismiss the unexhausted claims. 427 F.3d at 1175. When the complaint includes exhausted and unexhausted claims that are closely related and difficult to untangle, the court should dismiss the complaint with leave to amend to allege only the fully exhausted claims. Id. at 1176.

B. Discussion

The evidence offered by the parties demonstrates that plaintiff exhausted only one relevant inmate appeal before he brought this action. The sole exhausted appeal was Appeal No. 04-1782, submitted by plaintiff on November 18, 2004, and decided at the third level on March 15, 2005. Plaintiff's lengthy description of the problem begins as follows:

> To The Dept. of Corrections, Alimeda [sic]. Pursuant to PC 148.6, 3291, P.C. 832.5 (3268) which this is a citizen complaint that allegate [sic] misconduct, excessive force, blackmail, filing false claims by a peace officer and failure to give addaqate [sic] medical treatment. Due to these claims there is a need for this to be treated

---

[2] Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b). (See Order filed Oct. 21, 2005, at 3-4.)

> as a [sic] emergency matter basic [sic] on the defendants need for
> transfer custody from the said parties (see pg. 1 of 1) there are
> [illegible] witnesses (see question c/o witness page 5 of 10) (there
> are higher ranked witnesses to some degree see pg. 4 of 1) (there
> are inmate witnesses see pg 7 of 1)

(Def'ts' Mot. to Dismiss, Hudson Decl., Ex. 1 at 00004.)

Plaintiff raised the following issues in Appeal No. 04-1782:  the incident involving defendants Medina and Walton in plaintiff's cell on November 5, 2004; the requirement that upper level staff be present for a cell extraction and the presence of defendant Manuel and other high level staff nearby on November 5, 2004; the encounter with defendant Boone an hour after the incident; the subsequent visit paid by defendants Medina and Walton to plaintiff while he was in a holding cage after the incident; the denial of medical care by the MTA who medically cleared plaintiff for ad seg; the ad seg retention hearing with defendant Manuel on November 8, 2004; plaintiff's excessive force statement video taped by defendant Krlsuh on November 10, 2004; the committee hearing on November 12, 2004; the false charge of battery written by defendant Medina; and ongoing actions and conspiracy to cover up the incident up through November 18, 2004.  (Id., Ex. 1 at 00008-00009.)

Appeal No. 04-1782 bypassed the informal and first formal levels, and was partially granted at the second formal level on December 10, 2004.  (Id., Ex. 1 at 00004-00005.) The appeal was assigned for a formal investigation pursuant to state law.  (Id., Ex. 1 at 00006.) At the director's level, the inmate appeal was denied on the grounds that plaintiff's complaint of excessive force had been referred to the institution's use-of-force committee for investigation and the appeal had properly been granted in part at the second level.  (Id., Ex. 1 at 00002.)

The undersigned finds that Appeal No. 04-1782 exhausted plaintiff's claims concerning the events of November 5, 2004, and all related events between November 5, 2004, and November 18, 2004, including defendant Medina's retaliation and use of force; defendant Walton's retaliation and participation in the use of force; defendant Manuel's failure to protect plaintiff and failure to obtain medical treatment for him; defendant Schievelbein's failure to

1   protect plaintiff and failure to obtain medical treatment for him; defendant Boone's participation

2   in the retaliation; defendant Lathem's failure to provide or obtain medical care; defendant

3   Krlsuh's delay in video taping plaintiff's statement of excessive force, his restrictions on the

4   scope of plaintiff's statement, and his failure to obtain medical treatment for plaintiff; and

5   defendant Shepard's failure to obtain medical treatment for plaintiff.

6          Appeal No. 04-1782 did not exhaust claims that arose after November 18, 2004,

7   including claims concerning the rule violation report plaintiff received on November 20, 2004;

8   the disciplinary proceedings that followed; the security threat fabricated by defendant Adams; the

9   threats by defendant Manuel on January 4, 2005; the threats by defendant Armstrong on January

10  20, 2005; and defendant Peterson's denial of physicians' requests for an MRI and surgery for

11  plaintiff.

12         Virtually all of plaintiff's arguments about the exhaustion of these claims are

13  foreclosed by the Supreme Court's decisions in <u>Booth</u> and <u>Porter</u>:  (1) prisoners must exhaust

14  administrative remedies on all claims concerning prison conditions, regardless of the relief

15  available through the prison system's administrative procedures; (2) prisoners seeking only

16  monetary damages must nevertheless exhaust administrative remedies,[3] and (3) futility and other

17  exceptions should not be read into the statutory exhaustion requirement.  Plaintiff's exhaustion of

18  Appeal No. 04-1782 did not relieve him of the obligation to exhaust administrative remedies on

19  additional claims that arose after November 18, 2004.  Accordingly, plaintiff's claims concerning

20  the disciplinary proceedings, new threats and harassment by persons not involved in the events

21  that occurred prior to November 18, 2004, and proper treatment for his medical needs after

22  November 18, 2004, are distinct from the claims presented in Appeal No. 04-1782, and required

23  exhaustion of administrative remedies.

24  _____

25         [3] The prayer for relief in plaintiff's complaint is not limited to monetary damages.  While
    the injunctive relief requested in the complaint may be moot due to plaintiff's transfer to another
    institution and the fact that he is now on a waiting list for surgery, plaintiff did not bring this
26  action solely for monetary damages.

The undersigned has considered plaintiff's contention that an inmate is not required to exhaust an appeal if the appeal is granted in part at a lower level. Such an argument is persuasive when an appeal is granted in full at a lower level or when a partial grant provides all the relief available in the appeal process. The record does not reflect that any of plaintiff's appeals were granted in full at a lower level or that any of the appeals were partially granted and thereby provided plaintiff with all available relief.

In Appeal No. 05-003, plaintiff sought an emergency transfer, housing in the general population pending such a transfer, and immediate return of property taken on November 5, 2004. The appeal was granted at the first level only with regard to plaintiff's request to remain in the general population. His request for a transfer was denied, his property request was denied, and his claim of excessive force was found to be moot. The partial grant at the second level was based on a finding that there was no evidence of current issues requiring placement in ad seg and on the ground that plaintiff would be able to discuss his request for a transfer at his March 2005 annual review. Plaintiff proceeded to the second and third levels on this appeal because he was not satisfied with the decisions at the lower levels and additional relief was available in the appeal process. Appeal No. 05-003 was exhausted, but not before plaintiff brought this action.

In Appeal No. 05-197, plaintiff sought dismissal of the rule violation report issued on November 5, 2004, or a new hearing on the charge, as well as rescission of lost credits and a guarantee that there would be no reprisals. The appeal bypassed the informal and first formal levels and was partially granted at the second level only insofar as the warden stated no reprisals would be taken. It is evident that plaintiff proceeded to the third level on this appeal because he was not satisfied with the decision at the second level and additional relief was available in the appeal process. Appeal No. 05-197 was exhausted, but not before this action was brought.

In Appeal No. 05-229, plaintiff claimed lack of medical care and denial of an MRI and surgery. Plaintiff sought the medical services and treatment prescribed by his doctors. The appeal was partially granted at the first level, but only insofar as the request for an MRI had been

resubmitted to the medical authorization committee on February 28, 2005.  Plaintiff proceeded to the second level, where the appeal was partially granted, but only insofar as the physician's request for an MRI had been approved on May 5, 2005.  Plaintiff did not present this appeal to the third level despite the fact that he had not received either the medical services or the treatment prescribed by his doctors and additional relief may have been available at the third level.  Plaintiff did not exhaust this appeal.

After careful consideration of the parties' evidence and arguments, the undersigned finds that the claims prior to November 18, 2004, against defendants Medina, Walton, Manuel, Schievelbein, Boone, Lathem, Krlsuh, and Shepard were exhausted before plaintiff brought this action.[4]  Plaintiff's claims against defendants Adams, Armstrong, and Peterson should be dismissed without prejudice for failure to exhaust administrative remedies before bringing suit.

II.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

A.  Legal Standards

A motion brought pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the pleading.  For purposes of ruling on such a motion, the court must take as true the material facts alleged in the complaint.  Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740 (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The court must also construe the complaint in the light most favorable to the plaintiff.  Jenkins, 395 U.S. at 421; Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Pro se pleadings must be held to a less stringent standard than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  See also Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996) (noting that courts must liberally construe a pro se litigant's inartful pleading).  A motion to dismiss for

---

[4]  Defendants Lathem and Krlsuh have not been served with plaintiff's complaint.  If these findings and recommendations are adopted, plaintiff will be granted a final opportunity to provide a current address for service of process on these two defendants.

1  failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can

2  prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King

3  & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d

4  1289, 1294 (9th Cir. 1981).

5       B.  Discussion

6            Defendants have identified four categories of claims should be dismissed for

7  failure to state cognizable claims.

8            1.  Harassment by Defendants Armstrong, Adams, Boone, Manuel, and Walton

9            In light of the recommendation that all claims be dismissed against defendants

10  Armstrong and Adams, defendants' 12(b)(6) argument is moot as to those two defendants.  With

11  regard to defendants Boone, Manuel, and Walton, defendants argue that plaintiff's claims of

12  threats and harassment are not sufficient to state a claim.

13            In general, mere threats, profanity, and harassment do not violate the Eighth

14  Amendment proscription against cruel and unusual punishment.  See Gaut v. Sunn, 810 F.2d

15  923, 925 (9th Cir. 1987); Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  Here,

16  plaintiff's allegations of threats and harassment must be viewed in the context of his claims of

17  retaliation.  Retaliation by a state actor for a prisoner's exercise of a constitutional right is

18  actionable under § 1983, even if the acts, when taken for different reasons, would have been

19  proper or at least not unconstitutional.  See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S.

20  274, 283-84 (1977).  Individual acts of harassment and isolated threats that would not be

21  actionable in themselves may support a claim of retaliation where the defendant was retaliating

22  against the prisoner for exercising a constitutional right and retaliation was a substantial or

23  motivating factor for the defendant's acts or conduct.

24            Here, the pro se plaintiff has alleged that defendants' threats and harassment were

25  part of ongoing and continuous retaliation that began on November 5, 2004.  In the context of

26  plaintiff's retaliation claims, the allegations of threats and harassment should not be dismissed

1  for failure to state a claim because it does not appear beyond doubt that plaintiff can prove no set

2  of facts in support of his claims which would entitle him to relief.

3           2.  Supervisory Liability

4           Defendants contend that plaintiff seeks to hold defendants Manuel and

5  Schievelbein liable based on respondeat superior or some other theory of vicarious liability.

6           "A person 'subjects' another to the deprivation of a constitutional right, within the

7  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

8  omits to perform an act which he is legally required to do that causes the deprivation of which

9  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

10 personnel are generally not liable under § 1983 for the actions of their employees under a theory

11 of respondeat superior and therefore, when a named defendant holds a supervisorial position, the

12 causal link between the defendant and the claimed constitutional violation must be specifically

13 alleged.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438,

14 441 (9th Cir. 1978).

15          A supervisory official may be liable under § 1983 if the official was personally

16 involved in the prisoner's constitutional deprivation or if there is a sufficient causal connection

17 between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County

18 of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 645-46 (9th

19 Cir. 1989).  A causal connection may be shown by alleging facts that show the supervisor set in

20 motion a series of acts by others which the supervisor knew, or reasonably should have known,

21 would cause others to inflict the constitutional violation.  Ybarra v. Reno Thunderbird Mobile

22 Home Village, 723 F.2d 675, 680-81 (9th Cir. 1984); Johnson, 588 F.2d at 743-44.

23          This is not a case in which the plaintiff has sued supervisory defendants merely

24 because of their job titles, positions, or duties.  Plaintiff has alleged that higher level officials

25 should have been present during the cell extraction and that he saw defendants Manuel and

26 Schievelbein as he was being escorted from the upper tier on November 5, 2004.  On the basis of

his understanding of the requirements applicable to cell extractions and the nearby presence of Manuel and Schievelbein in his housing unit, plaintiff infers that the captain and the associate warden knew what defendants Medina and Walton were planning to do and permitted the assault to occur.

In addition, plaintiff has alleged the personal involvement of defendants Manuel and Schievelbein after the November 5, 2004 incident:  the ad seg retention hearing before defendant Manuel on November 8, 2004, and the interview with defendant Schievelbein on November 11, 2004.  Plaintiff infers from the defendants' unfulfilled promises of medical treatment that they were acting to cover up the assault by defendants Medina and Walton.

Under the circumstances alleged in this action,  the claims against defendants Manuel and Schievelbein should not be dismissed for failure to state a claim because it does not appear beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

    3.  <u>Deliberate Indifference to Medical Needs by Defendants Manuel, Schievelbein, Krlsuh, Shepard, Boone, Medina, Walton, and Peterson</u>

In light of the recommendation that all claims be dismissed against defendant Peterson, defendants' 12(b)(6) argument is moot as to defendant Peterson.  With regard to defendants Manuel, Schievelbein, Krlsuh, Shepard, Boone, Medina, and Walton, defendants argue that plaintiff's allegations fail to state a claim of deliberate indifference to medical needs because plaintiff merely told these defendants about facial injuries and an injury to his finger, the defendants said they would get care for him, and he was not treated on the specific day he talked to each defendant.

In order to state a § 1983 claim for violation of the Eighth Amendment based on denial of medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A claim of constitutionally inadequate medical care has two elements:  "the seriousness of the

1  prisoner's medical need and the nature of the defendant's response to that need." McGuckin v.

2  Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).

3          A medical need is serious "if the failure to treat the prisoner's condition could

4  result in further significant injury or the 'unnecessary and wanton infliction of pain.'" 974 F.2d

5  at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the

6  presence of a medical condition that significantly affects an individual's daily activities." Id. at

7  1059-60. In demonstrating the existence of a serious medical need, a prisoner satisfies the

8  objective requirement for proving an Eighth Amendment violation. See Farmer v. Brennan, 511

9  U.S. 825, 834 (1994). Next, plaintiff must allege facts demonstrating that each defendant

10 responded to the serious medical need with deliberate indifference. Facts that will establish the

11 deliberate indifference of each defendant are required to satisfy the subjective prong of the two-

12 part test applicable to any Eighth Amendment claim. Farmer, 511 U.S. at 834. Before it can be

13 said that a prisoner's civil rights have been abridged with regard to medical care, "the

14 indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or

15 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories,

16 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

17          Here, plaintiff has alleged denial of medical care or interference with his attempts

18 to obtain medical care by defendants Manuel, Schievelbein, Krlsuh, Shepard, Boone, Medina,

19 and Walton. These claims must be considered in the context of plaintiff's allegations of

20 retaliation, his inference that some defendants acted to delay medical treatment in order to cover

21 up the misconduct of other defendants, and the allegation that some defendants intercepted and

22 destroyed plaintiff's mail for the same purpose. Plaintiff solicited the assistance of a large

23 number of prison officials, but not one of those officials, including a captain, an associate

24 warden, a lieutenant, and the warden of the institution, was able to arrange for medical treatment

25 for plaintiff during the ten days that followed the incident during which he sustained injuries.

26 Although defendants appear to regard plaintiff's mail to family concerning his need for medical

1   treatment as inconsequential, it is noteworthy that plaintiff did not receive medical treatment

2   until plaintiff's mother called the institution on his behalf on November 15, 2004.

3                   Under the circumstances alleged in this action,  the claims against defendants

4   Manuel, Schievelbein, Krlsuh, Shepard, Boone, Medina, and Walton should not be dismissed for

5   failure to state Eighth Amendment claims of deliberate indifference to serious medical needs

6   because it does not appear beyond doubt that plaintiff can prove no set of facts in support of his

7   claims which would entitle him to relief.

8                   4.  Conspiracy

9                   Defendants argue that plaintiff's allegations of conspiracy, to the extent that he

10  has attempted to allege a conspiracy, fail to state a claim under 42 U.S.C. § 1985(3) or under

11  state law.

12                  At screening, the undersigned did not find a cognizable claim of conspiracy in

13  plaintiff's complaint.  However, in response to defendants' motion, plaintiff states that he

14  opposes "the response by defendant's claim that there exist no conspiracy, and that Plaintiff

15  failed to sustain a claim of conspiracy."  (Pl.'s Opp'n at 19.)  He cites "Complaint Filed Pg 18,

16  39 -54" but offers no further explanation or analysis of his conspiracy claim.

17                  The undersigned has examined paragraphs 39 through 54 of plaintiff's complaint,

18  beginning on page 18.  Plaintiff alleges that

19                          defendants Medina, Walton, Boone, Manuel, and Adams enlisted
                            defendant Peterson in a cover up of the injuries that resulted from
20                          defendant Medina's use of excessive physical force.  Plaintiff is
                            further informed and believes, and thereon alleges, that defendant
21                          Peterson willfully participated in said cover up by repeatedly
                            refusing to approve the physician requested medical evaluation and
22                          treatment.  In doing so, defendant Peteson [sic] demonstrated
                            deliberate indifference to plaintiff's serious medical needs.
23                          Peterson's actions caused plaintiff to experience prolonged and
                            unnecessary extreme physical pain and suffering.
24

25  (Compl. ¶ 39.)  In the paragraphs that follow, plaintiff reiterates his allegations of retaliation by

26  defendants Medina and Walton, assault and battery by defendant Medina, supervisorial liability

19

of defendants Manuel and Schievelbein for allowing the assault and battery to occur, further

retaliation and deliberate indifference to plaintiff's medical needs by defendants Medina, Walton,

and Boone, retaliation and deliberate indifference to plaintiff's medical needs by defendant

Lathem, due process violations by defendant Adams, retaliation and interference with plaintiff's

right to seek redress of grievances under the First and Eighth Amendments by defendants

Manuel, Adams, Boone, Medina, Walton, and Armstrong, deliberate indifference to plaintiff's

medical needs by defendants Lathem, Manuel, Krlsuh, Schievelbein, and Shepherd, deliberate

indifference to plaintiff's medical needs by defendant Peterson. (Id. ¶¶ 40-49.)  The remaining

paragraphs cited by plaintiff assert that defendants acted under color of state law, in their official

capacity, and within the scope of their employment; deprived plaintiff of personal safety and

health, a basic human need; and, as a proximate result of their actions, caused plaintiff to suffer

mental, emotional, physical, and psychological injury.  (Id. ¶¶ 50-54.)

The word conspiracy does not appear in the paragraphs cited by plaintiff.  At

most, the allegation that defendants Medina, Walton, Boone, Manuel, and Adams "enlisted"

defendant Peterson in a cover up.  To the extent that plaintiff intended to allege a state or federal

claim of conspiracy involving Peterson, the claim is unexhausted and should be dismissed along

with all other claims that arose after November 18, 2004.

Accordingly, IT IS RECOMMENDED that:

1.  Defendants' March 16, 2006 motion to dismiss pursuant to unenumerated Rule

12(b) be granted as to all of plaintiff's claims against defendants Adams, Armstrong, and

Peterson and all claims that arose after November 18, 2004;

2.  Plaintiff's claims against defendants Adams, Armstrong, and Peterson and all

claims that arose after November 18, 2004 be dismissed without prejudice for failure to exhaust

available administrative remedies prior to bringing this suit; and

3.  Defendants' March 16, 2006 motion to dismiss pursuant to Rule 12(b)(6) be

denied.

1    These findings and recommendations will be submitted to the United States

2    District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

3    twenty days after being served with these findings and recommendations, any party may file and

4    serve written objections with the court.  A document containing objections should be titled

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

6    shall be filed and served within ten days after service of the objections.  The parties are advised

7    that failure to file objections within the specified time may, under certain circumstances, waive

8    the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9    1991).

10   DATED: January 16, 2007.

11

12   _____

13   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

14   DAD:13
     thom1243.mtd

15

16

17

18

19

20

21

22

23

24

25

26