1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH THOMAS,

11          Plaintiff,              No. CIV S-05-1243 MCE DAD P

12      vs.

13   MANUEL MEDINA, et al.,

14          Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  The matter is before the court on defendants' April 25, 2008

18   motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil

19   Procedure.  Plaintiff has not filed any opposition to the motion.[1]

20   /////

21   /////

22

23      [1]  On June 9, 2008, and July 18, 2008, the undersigned granted plaintiff's requests for an
     extension of time to file an opposition to defendants' motion for summary judgment.  Having not
24   received a timely opposition to the motion, on October 10, 2008, the undersigned issued an order
     to show cause, ordering plaintiff to file an opposition within twenty days.  The court warned
25   plaintiff that failure to do so would be deemed as a statement of non-opposition and result in a
     recommendation that this action be dismissed.  Plaintiff has not complied with the court's
26   October 10, 2008 order.  Accordingly, dismissal pursuant to Federal Rule of Civil Procedure
     41(b) would be justified.

                                         1

**BACKGROUND**

1

2          Plaintiff is proceeding on his original complaint.  Therein, he alleges as follows.

3   On September 8, 2004, his wife and children were leaving after an overnight family visit when

4   defendant correctional officers Medina and Walton and correctional officer Jones illegally

5   detained and interrogated them.  Plaintiff filed a misconduct complaint against the officers and

6   requested that officials investigate the matter and discipline the officers.  (Compl. at 3.)

7          On November 5, 2004, defendants Medina and Walton conducted an unauthorized

8   search of plaintiff's cell in retaliation for his filing of the misconduct complaint.  The officers

9   snatched open the cell door, rushed inside, and shouted profanities and conflicting commands at

10  plaintiff and his cellmate.  Plaintiff informed them that they were confusing and frightening him,

11  but the officers told him to lay on the floor with his head near the cell entrance.  When plaintiff

12  began yelling for help from other custody staff, defendant Medina grabbed him, tore his

13  undershirt off his body, and slammed his face into the bars of the adjacent cell.  (Compl. at 4.)

14          Plaintiff informed defendant Medina that he was not resisting and raised his hands

15  above his head to allow Medina to place him in mechanical restraints.  Defendant Medina then

16  attempted to slam plaintiff's face into the cell bars again.  When plaintiff grabbed the cell bars,

17  defendant Medina leaned close to his ear and told him that he was going to teach him about

18  "writing paper" about him and his partners.  After a struggle, defendant Medina slammed

19  plaintiff to the floor, dislocating his shoulder, climbed on top of plaintiff and placed his knee on

20  plaintiff's neck, restricting plaintiff's breathing.  Plaintiff tried to call for help, but defendant

21  Medina told him that he had just bought himself an assault charge.  Defendant Medina then

22  yelled "that's my knee," as if plaintiff had assaulted him, and grabbed plaintiff's ring finger and

23  twisted it until it too dislocated.  After plaintiff was placed in mechanical restraints, another

24  officer escorted him to the custody complex. (Compl. at 5-6.)

25          Defendants Schievelbein and Manuel were present in the housing unit at the time

26  of defendants Medina and Walton too their retaliatory actions against plaintiff and deliberately

2

1   failed to prevent the conduct.  During an encounter with defendant Boone about an hour after

2   being placed in a holding cage plaintiff was informed that Boone also knew of the retaliatory

3   plan and was participating in it.  (Compl. at 6-7.)

4           About two hours after plaintiff was placed in the holding cage, defendants Medina

5   and Walton began taunting him.  When MTA Latham came to medically clear plaintiff for

6   placement in the administrative segregation unit, plaintiff told him about the injuries to his face,

7   finger, and shoulder and pleaded for medical attention but Latham responded that he did not see

8   anything wrong and told plaintiff that he would see someone in administrative segregation the

9   next day.  Defendant Latham then cleared plaintiff for administrative segregation without

10  providing any medical treatment and falsely documented in a medical report that plaintiff had no

11  visible injuries. (Compl. at 7-8.)  Latham also falsely reported that when asked what had

12  happened to him,  plaintiff responded that he had no idea.  (Id.)

13          On November 8, 2004, Plaintiff appeared before defendant Manuel for an

14  administrative segregation retention hearing.  Plaintiff complained about lack of medical

15  treatment and the retaliatory actions of defendants Medina and Walton.  Defendant Manuel stated

16  that  she would stand by her officers and support their allegations no matter what.  Defendant

17  Manuel also said that she would send someone to video record plaintiff's excessive force

18  complaint and promised she would call the staff physician so that plaintiff would receive medical

19  treatment that day.  (Compl. at 8-9.)

20          On November 9, 2004, plaintiff stopped MTA White as he was distributing

21  medications in administrative segregation.  MTA White commented on plaintiff's visible facial

22  injuries and swelling, provided plaintiff with pain medication, accurately documented plaintiff's

23  injuries, and said he would bring the matter to the staff physician's attention and request that

24  someone see plaintiff without delay.  (Compl. at 9.)

25          On November 10, 2004, Lieutenants Krlsuh and Norris video recorded plaintiff's

26  excessive force complaint but told him to confine his statements to the actual physical contact

3

1   with defendant Medina, covering-up defendant Medina and Walton's other unauthorized actions.

2   In response to plaintiff's complaint regarding lack of medical care, defendant Krlsuh promised to

3   see what he could do.  However, plaintiff did not receive medical treatment that day.  (Compl. at

4   9-10.)

5            On November 11, 2004, defendant Schievelbein interviewed plaintiff and told

6   him that appropriate action would be taken against defendants Medina and Walton.  He also told

7   plaintiff not to worry about a disciplinary charge and promised him medical care.  Plaintiff did

8   not, however, receive medical treatment that day either.  (Compl. at 10.)

9            On November 12, 2004, at a classification committee meeting, Warden Shepherd

10  informed plaintiff that his complaint of excessive force had been referred to the appropriate

11  committee.  Defendant Shepherd promised plaintiff that he would receive medical care for his

12  still visible facial injuries and other injuries.  Again, plaintiff  did not receive medical treatment

13  that day.  (Compl. at 11.)

14           Between November 5, 2004, and November 13, 2004, plaintiff mailed several

15  letters to his family about the assault and his injuries but later learned they did not receive any of

16  the letters.  During the same period of time, defendants Medina, Walton, and Boone came to

17  administrative segregation several times, taunted plaintiff for sending written complaints to his

18  family and prison officials, and asked him what he thought he or his people could do.  Plaintiff

19  believes defendants Medina, Walton, and Boone intercepted his letters and destroyed them.

20  (Compl. at 11.)

21           On November 15, 2004, plaintiff's mother called the institution and complained

22  about plaintiff not receiving medical care.  Plaintiff was then taken to the clinic for treatment and

23  x-rays the same day.  On November 16, 2004, plaintiff returned to the clinic to review the x-rays.

24  During the visit, defendants Walton and Boone entered the clinic and observed the medical

25  consultation, thereby influencing the prison doctor to conduct a cursory examination and

26  downplay the seriousness of plaintiff's injuries.  (Compl. at 12-13.)

1       On November 20, 2004, plaintiff and his cellmate received rule violation reports

2   with plaintiff being charged with battery on a peace officer, and his cellmate being charged with

3   resistive behavior.  Plaintiff requested that defendants Medina, Walton, Manuel, and two

4   additional correctional officers be interviewed and called as witnesses at the hearing.  (Compl. at

5   13-14.)

6       On December 19, 2004, at plaintiff's hearing, defendant Adams refused to call

7   any of plaintiff's requested witnesses, falsely wrote that plaintiff rescinded his request for

8   witnesses, falsely recorded that plaintiff pled guilty to the disciplinary charge, and found plaintiff

9   guilty of the lesser charge of resistive behavior.  (Compl. at 13-14.)

10      On or about December 28, 2004, defendant Adams told plaintiff and his cellmate

11   that the Mexican Mafia and White inmates had put a hit out on them.  Defendant Adams

12   fabricated this threat to place plaintiff back in administrative segregation and to prevent him from

13   appealing defendant Adams' disciplinary decision.  On December 30, 2004, plaintiff appealed

14   the disciplinary decision and requested a transfer.  (Compl. at 14-15.)

15      On January 4, 2005, defendant Manuel threatened plaintiff with administrative

16   segregation for filing grievances.  Similarly, on January 20, 2005, Lieutenant Armstrong

17   threatened plaintiff with a retaliatory transfer for pursuing grievances.  (Compl. at 15-16.)

18      Plaintiff suffered repeated shoulder dislocations after November 5, 2004.  Drs.

19   McArthur and Torruella told plaintiff that he needed an MRI and would continue to suffer

20   dislocations if he did not receive surgery.  Both doctors requested an MRI and surgery for him,

21   but defendant Peterson, the Chief Medical Officer, denied the requests.  (Compl. at 13-18.)

22      By way of relief, plaintiff seeks a transfer from Folsom State Prison, an MRI, an

23   evaluation by a specialist along with any medical treatment the specialist orders, and

24   compensatory and punitive damages.  (Compl. at 21.)

25   /////

26   /////

5

# PROCEDURAL HISTORY

On June 28, 2005, the court determined that plaintiff's complaint appeared to state cognizable claims against eleven defendants.  On October 17, 2005, plaintiff submitted the documents required for service of the complaint.  By order filed October 21, 2005, the court directed the United States Marshal to serve the defendants.  The Marshal was unable to effect service on defendants Latham, Krlsuh, and Adams but executed service on defendants Armstrong, Boone, Manuel, Medina, Peterson, Schievelbein, Shepherd, and Walton.  On March 16, 2006, defendants filed a motion to dismiss pursuant to unenumerated Rule 12(b) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On July 10, 2006, plaintiff filed his opposition to defendants' motion.  Defendants did not filed a reply.

On January 17, 2007, the undersigned issued findings and recommendations on defendants' motion to dismiss finding that plaintiff exhausted his claims concerning the events of November 5, 2004, and all related events between November 5, 2004, and November 18, 2004, including defendant Medina's alleged retaliation and use of force; defendant Walton's alleged retaliation and participation in the use of force; defendant Manuel's alleged failure to protect plaintiff and failure to obtain medical treatment for him; defendant Schievelbein's alleged failure to protect plaintiff and failure to obtain medical treatment for him; defendant Boone's alleged participation in the retaliation; defendant Latham's alleged failure to provide or obtain medical care; defendant Krlsuh's alleged delay in video taping plaintiff's statement regarding the use of excessive force, his restrictions on the scope of plaintiff's statement, and his failure to obtain medical treatment for plaintiff; and defendant Shepherd's alleged failure to obtain medical treatment for plaintiff.  However, the court also found that plaintiff had failed to exhaust claims that arose after November 18, 2004, including claims concerning the rules violation report he received on November 20, 2004; the disciplinary proceedings that followed; the security threat allegedly fabricated by defendant Adams; the alleged threats by defendant Manuel on January 4, 2005; the alleged threats by defendant Armstrong on January 20, 2005; and defendant Peterson's

1  denial of physicians' requests for an MRI and surgery for plaintiff.  Finally, the undersigned

2  found that, plaintiff's claims regarding defendants' alleged threats and harassment should not be

3  dismissed and instead should be read in the context of plaintiff's retaliation claim, that plaintiff

4  had sufficiently alleged defendant Manuel and Schievelbein's involvement in the deprivation of

5  his constitutional rights, and that plaintiff had stated a cognizable claim for deliberate

6  indifference to his serious medical needs against defendants Boone, Manuel, Medina, Krlsuh,

7  Schievelbein, Shepherd, and Walton.  Thus, the undersigned concluded that defendants' motion

8  to dismiss pursuant to unenumerated Rule 12(b) should be granted as to all of plaintiff's claims

9  against defendants Adams, Armstrong, and Peterson, and all claims that arose after November

10  18, 2004, and that defendants' motion to dismiss pursuant to Rule 12(b)(6) should be denied.

11         On March 8, 2008, the assigned district judge adopted those findings and

12  recommendations in full.  On March 12, 2007, defendants Boone, Manuel, Medina,

13  Schievelbein, Shepherd, and Walton filed an answer.  On March 22, 2007, the court issued a

14  discovery order.  On April 25, 2008, defendants filed a motion for summary judgment.  As noted

15  above, plaintiff has not filed an opposition to that motion.

16                **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

17         Summary judgment is appropriate when it is demonstrated that there exists "no

18  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

19  matter of law."  Fed. R. Civ. P. 56(c).

20             Under summary judgment practice, the moving party
             always bears the initial responsibility of informing the district court
21             of the basis for its motion, and identifying those portions of "the
             pleadings, depositions, answers to interrogatories, and admissions
22             on file, together with the affidavits, if any," which it believes
             demonstrate the absence of a genuine issue of material fact.
23

24  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

25  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

26  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

1    to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

2    after adequate time for discovery and upon motion, against a party who fails to make a showing

3    sufficient to establish the existence of an element essential to that party's case, and on which that

4    party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

5    concerning an essential element of the nonmoving party's case necessarily renders all other facts

6    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

7    whatever is before the district court demonstrates that the standard for entry of summary

8    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

9           If the moving party meets its initial responsibility, the burden then shifts to the

10   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

11   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

12   establish the existence of this factual dispute, the opposing party may not rely upon the

13   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

14   form of affidavits, and/or admissible discovery material, in support of its contention that the

15   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

16   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

17   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

18   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

20   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

21   1436 (9th Cir. 1987).

22          In the endeavor to establish the existence of a factual dispute, the opposing party

23   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

24   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

25   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

26   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8

1   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2   committee's note on 1963 amendments).

3          In resolving the summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

6   477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

7   court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

8   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9   produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

10  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11  1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12  show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

13  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

15         On October 21, 2005, the court advised plaintiff of the requirements for opposing

16  a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

17  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

18                          **OTHER APPLICABLE LEGAL STANDARDS**

19         The Civil Rights Act under which this action was filed provides as follows:

20         Every person who, under color of [state law] . . . subjects, or causes
           to be subjected, any citizen of the United States . . . to the
21         deprivation of any rights, privileges, or immunities secured by the
           Constitution . . . shall be liable to the party injured in an action at
22         law, suit in equity, or other proper proceeding for redress.

23  42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the

24  actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See

25  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

26  (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

9

1   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

2   omits to perform an act which he is legally required to do that causes the deprivation of which

3   complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

4          Supervisory personnel are generally not liable under § 1983 for the actions of their

5   employees under a theory of respondeat superior and, therefore, when a named defendant holds a

6   supervisorial position, the causal link between him and the claimed constitutional violation must

7   be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

8   Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the

9   involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

10  of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

11  II.  Eighth Amendment and Excessive Force

12         The Eighth Amendment prohibits the infliction of "cruel and unusual

13  punishments."  U.S. Const. amend. VIII.  It is well established that the "unnecessary and wanton

14  infliction of pain" constitutes cruel and unusual punishment prohibited by the United States

15  Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430

16  U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor

17  negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not

18  inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

19  Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

20         What is needed to show unnecessary and wanton infliction of pain "varies

21  according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.

22  1, 5 (1992) (citing Whitley, 475 U.S. at 320).  The plaintiff must show that objectively he

23  suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable

24  state of mind in allowing or causing the plaintiff's deprivation to occur.  Wilson v. Seiter, 501

25  U.S. 294, 298-99 (1991).

26  /////

1       "The objective component of an Eighth Amendment claim is . . . contextual and

2   responsive to 'contemporary standards of decency.'" Hudson, 503 U.S. at 8 (quoting Estelle, 429

3   U.S. at 103).  The objective prong of the test requires the court to consider whether the alleged

4   wrongdoing was harmful enough to establish a constitutional violation.  Hudson, 503 U.S. at 8;

5   Wilson, 501 U.S. at 298.  In the context of an excessive use of force claim, however, the

6   objective prong does not require a prisoner to show a "significant injury" in order to establish

7   that he suffered a sufficiently serious constitutional deprivation.  Hudson, 503 U.S. at 9-10.

8       The subjective prong of the two-part test is also contextual.  Wilson, 501 U.S. at

9   299.  A prison official acts with the requisite "culpable mind" with respect to an excessive use of

10  force claim if he acts maliciously and sadistically for the purpose of causing harm.  Whitley, 475

11  U.S. at 320-21.  "[W]henever prison officials stand accused of using excessive physical force in

12  violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in

13  Whitley, i.e.,  whether force was applied in a good-faith effort to maintain or restore discipline,

14  or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.

15  III.  Eighth Amendment and Failure to Protect

16      Where a prisoner's Eighth Amendment claims arise in the context of an alleged

17  failure to protect, the Supreme Court has held that a prison official violates the Eighth

18  Amendment "only if he knows that inmates face a substantial risk of serious harm and disregards

19  that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  Under this

20  standard, a prison official must have a "sufficiently culpable state of mind," one of deliberate

21  indifference to the inmate's health or safety.  Id. at 834.

22  IV.  Eighth Amendment and Inadequate Medical Care

23      Where a prisoner's Eighth Amendment claims arise in the context of medical

24  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

25  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

26  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

11

1  and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050,

2  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

3  (9th Cir. 1997) (en banc).

4          A medical need is serious "if the failure to treat the prisoner's condition could

5  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

6  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

7  need include "the presence of a medical condition that significantly affects an individual's daily

8  activities." Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

9  satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

10  Brennan, 511 U.S. 825, 834 (1994).

11          If a prisoner establishes the existence of a serious medical need, he must then

12  show that prison officials responded to the serious medical need with deliberate indifference.

13  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

14  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

15  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

16  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

17  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

18  'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

19  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

20  105-06.  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

21  negligence in diagnosing or treating a medical condition, without more, does not violate a

22  prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

23  indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

24  ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

25  (quoting Whitley, 475 U.S. at 319).

26  /////

1    Delays in providing medical care may manifest deliberate indifference.  Estelle,

2    429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

3    providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

4    1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

5    1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

6    Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

7    prisoner need not show his harm was substantial; however, such would provide additional

8    support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

9    v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

10    Finally, mere differences of opinion between a prisoner and prison medical staff

11    as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

12    Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

13    Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Or., 662 F.2d 1337, 1344 (9th Cir. 1981).

14    V.  First Amendment and Retaliation

15    Both initiation of litigation before the court and the filing of administrative

16    grievances are protected activities, and it is impermissible for prison officials to retaliate against

17    prisoners for engaging in these activities.  See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir.

18    2005).  As the Ninth Circuit has explained:

19    Within the prison context, a viable claim of First Amendment
     retaliation entails five basic elements: (1) An assertion that a state
20    actor took some adverse action against an inmate (2) because of (3)
     that prisoner's protected conduct, and that such action (4) chilled
21    the inmate's exercise of his First Amendment rights, and (5) the
     action did not reasonably advance a legitimate correctional goal.
22

23    Rhodes, 408 F.3d at 567-68.  See also Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.

24    2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally,

25    "after this, therefore because of this.").

26    /////

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations of defendants Boone, Manuel, Medina, Schievelbein, Shepherd, and Walton, as well as to declarations from other prison officials. It is also supported by citations to plaintiff's medical records and transcripts of plaintiff's disciplinary hearing and deposition.

The evidence submitted by defendants establishes the following. In November 2004, Lieutenant Boyd directed defendants Medina and Walton to perform a cell search because plaintiff and his cellmate may have contraband in their cell. On November 5, 2004, defendants Medina and Walton reported to plaintiff's cell to conduct the search. In an attempt to prevent destruction of contraband, defendant Walton entered the cell before ordering the inmates to exit. Once he entered the cell, defendant Walton instructed plaintiff and his cellmate to remain still. Instead, plaintiff blocked defendant Medina and Walton's view while his cellmate flushed something down the toilet. Plaintiff ignored repeated orders to exit the cell, so defendant Walton moved him towards the exit and defendant Medina escorted him out. Although defendant Medina ordered plaintiff down, plaintiff stood and grasped the bars. Defendant Medina then struggled with plaintiff to pull him off the bars and gain compliance with his order. During the struggle, defendant Medina's foot slipped under the security rail of the fourth floor tier. As defendant Medina fell to the ground, he held onto plaintiff to prevent him from becoming free because he feared for his safety and that of defendant Walton's. Defendant Medina continued to give oral orders to plaintiff. (Exs. 1 & 2.)

During the struggle, defendant Medina never intentionally struck plaintiff with his elbow nor did he intentionally slam plaintiff's face into the bars. Defendant Medina did not use pepper spray or a baton or weapon. Nor did defendant Medina ever strike plaintiff with his fist. During the struggle, defendant Medina used only the force that he felt was reasonable under the circumstances. He never intended to cause harm to plaintiff and believed that he was using the

1    minimum force necessary to bring plaintiff under control.  In its entirety, the struggle between

2    defendant Medina and plaintiff lasted about two minutes.  After the struggle, defendants Walton

3    and Medina performed a cell search of plaintiff's cell and discovered a suspicious note relating to

4    cellular telephones.  (Exs. 1 & 2.)

5         As a result of the struggle with defendant Medina, plaintiff received a rules

6    violation report, charging him with battery on staff without serious injury.  The Senior Hearing

7    Officer elected to amend the charge to one for resistive behavior.  Plaintiff admitted to resisting

8    during the struggle with defendant Medina and was found guilty of the resistive behavior charge

9    and assessed 30-days loss of credit.  The evidence considered during the hearing included (1) the

10   reporting employee's written report which stated in part that while he attempted to secure

11   plaintiff from his cell, he "continued to resist"; (2) plaintiff's admission to the written charge at

12   the time of the hearing; and (3) correctional officer Guillen's statement to the investigative

13   employee in which he stated, "Additionally, Inmate Thomas resisted Officer Medina which led to

14   his foot coming off the tier."  (Ex. 16.)

15        On November 5, 2004, MTA Latham saw plaintiff for a physical examination.

16   When questioned about his injuries, plaintiff stated: "I have no idea" and "I have a little swelling

17   on the right side of my face."  Upon examination, however, MTA Latham found no injuries.  On

18   the same day, correctional officer Diaz took a urine sample from plaintiff.  The results of the

19   urine analysis were positive for THC/marijuana.  (Exs. 17 & 18.)

20        On November 6, 2004, plaintiff submitted a health care services request form

21   indicating that his asthma was acting up, he was having difficulty breathing, and he was coughing

22   up mucus.  On November 8, 2004, MTA White saw plaintiff.  MTA White completed a medical

23   report of injury or unusual occurrence and interdisciplinary progress note.  On November 15,

24   2004, MTA White saw plaintiff again.  MTA White completed a medical report of injury or

25   unusual occurrence form.  On the same day, because plaintiff complained to a nurse about

26   injuries to his face, shoulder, and arm, a physician saw plaintiff and ordered x-rays of those areas.

On November 16, 2004, plaintiff's x-rays came back negative for acute bone injury.  On

November 16, 2004, a physician saw plaintiff for follow-up regarding the x-rays.  (Exs. 19-27.)

On January 5, 2005, Dr. Tourruella saw plaintiff and diagnosed him with recurrent

dislocation of his right shoulder based on his history.  Dr. Torruella asked for an MRI or

orthopedic consultation in light of plaintiff's history of right shoulder dislocation.  However, the

request was denied because of lack of documentation of the shoulder dislocation.  On January 19,

2005, Dr. Torruella saw plaintiff again and advised him to go to the clinic when his shoulder

actually dislocated in order to document the dislocation by exam.  (Exs. 30 & 31.)

On June 6, 2005, plaintiff received an MRI of his right shoulder, which showed an

anterior labral tear with likely capsular stripping.  On June 29, 2005, plaintiff transferred from

Folsom State Prison to San Quentin State Prison.  On August 19, 2005, Dr. Jeffrey Tanji of UC

Davis Health Systems saw plaintiff and diagnosed him with recurrent shoulder dislocation with

dead-arm syndrome.  According to Dr. Tanji, more than six episodes of shoulder dislocation in a

one-year period generally indicates the need for a glenhumeral capsular repair.  A recurrent

shoulder dislocation is diagnosed over time because the shoulder dislocates and relocates.  (Exs.

7, 14, 32 & 33.)

On July 27, 2007, Dr. John N. Diana consulted with plaintiff and diagnosed him

with recurrent right shoulder dislocation with soft tissue Bankart tear.  Plaintiff reported to Dr.

Diana that he injured his shoulder two years earlier in an altercation, but he thought it was just a

strain so he did not seek immediate medical attention.  On October 30, 2007, plaintiff underwent

an arthroscopic Bankart labral repair to the right shoulder.   (Exs. 34 & 35.)

Customarily, following a struggle such as the one between plaintiff and defendant

Medina, medical staff addresses the inmate's medical needs, if any.  Between November 5, 2004,

and November 18, 2004, defendants Boone, Manuel, Medina, Schievelbein, Shepherd, and

Walton never interfered or obstructed plaintiff's medical care or intercepted or destroyed

plaintiff's letters or medical requests.  In addition, any delay in plaintiff's medical treatment

1  between November 5, 2004, and November 18, 2004, did not alter his ultimate diagnosis,

2  treatment, or outcome of his medical care.  (Exs. 1-7.)

3         Plaintiff's retaliation claim is based on defendants' alleged actions in response to

4  his filing of a misconduct complaint against defendants Medina and Walton and correctional

5  officer Jones after an overnight family visit.  Until filing of the original complaint in this action,

6  defendants Boone, Manual, Medina, Schievelbein, and Walton were unaware of plaintiff filing or

7  attempting to file grievances pertaining to the questioning of his wife or the September 2004

8  contraband investigation.  (Exs. 1-5.)

9  II.  Defendants' Arguments

10         Defense counsel argues that under the undisputed facts of this case the defendants

11  are entitled to summary judgment because there is no evidence from which a reasonable jury

12  could conclude that defendants violated plaintiff's constitutional rights.  Counsel also argues that

13  defendants are entitled to qualified immunity.  (Defs.' Mot. for Summ. J. at 1.)

14         First, counsel argues that defendant Medina used reasonable force during his

15  struggle with plaintiff in an attempt to restore discipline.  Counsel contends that plaintiff's

16  resistance created a dangerous situation requiring the use of force, and their struggle resulted in

17  defendant Medina's foot slipping under the fourth floor security rail, putting the defendant in a

18  compromising situation.  Counsel notes that, despite these circumstances, defendant Medina

19  never used pepper spray, a baton, or other weapon.  Rather, defendant Medina applied only the

20  necessary force in good faith to regain control of the situation.  (Defs.' Mot. for Summ. J. at 5.)

21         Second, counsel argues that defendants Medina and Walton did not retaliate

22  against plaintiff when they conducted a cell search.  Lieutenant Boyd ordered them to perform a

23  cell search because he had information that plaintiff and his cellmate had contraband in their cell.

24  Thus, the actions of defendants Medina and Walton advanced legitimate correctional goals.

25  Moreover, plaintiff admitted to, and has been found guilty of, resisting officers during the

26  struggle.  In this regard too, defendant Medina's use of force advanced the legitimate correctional

1  goal of obtaining compliance from a resisting inmate.  Counsel also argues that defendant

2  Medina and Walton's actions were not in response to plaintiff's filing of a misconduct complaint.

3  At the time of the cell search, the defendants were unaware of the complaint.  In addition,

4  counsel argues that plaintiff's allegations that defendants Medina, Walton, and Boone made oral

5  threats and harassed him do not support a retaliation claim because mere speech, in response to

6  speech, does not constitute a First Amendment violation.  Finally, counsel argues that plaintiff

7  has not alleged that defendants' conduct injured him by chilling his First Amendment rights.  Nor

8  would a person of ordinary firmness be inhibited from exercising his First Amendment rights

9  because of the alleged retaliatory actions in this case.  (Defs.' Mot. for Summ. J. at 5-7.)

10          Third, counsel argues that plaintiff cannot maintain an excessive force or

11  retaliation claim against defendant Medina because he has not had his guilty conviction for

12  resisting an officer overturned by a court.  Counsel contends that a judgment in plaintiff's favor

13  on these claims would necessarily imply the invalidity of the disciplinary action finding him

14  guilty of resistance during the November 5, 2004 struggle.  (Defs.' Mot. for Summ. J. at 10.)

15          Fourth, counsel argues that defendants were not deliberately indifferent to his

16  medical needs.  Counsel contends that no harm resulted from any alleged delay in medical

17  treatment.  Plaintiff's x-rays were all negative for injury, and although he ultimately received a

18  recurrent shoulder dislocation diagnosis, it takes time for that condition to become apparent.

19  Further, repair of that type of condition is not normally recommended until the patient has six or

20  more episodes of dislocation in one year.  Any delay in medical treatment during November 2004

21  did not change plaintiff's ultimate diagnosis, treatment, or medical outcome.  Counsel also

22  contends that plaintiff cannot show that the defendants had the requisite culpable state of mind.

23  At Folsom State Prison, any necessary care and treatment for an inmate is addressed by medical

24  personnel.  In the two weeks between November 5, 2005, and November 18, 2004, the prison's

25  medical personnel attended to plaintiff at least seven times and took x-rays to determine whether

26  he had injuries.  Counsel emphasizes that the defendants did not obstruct or interfere with

1  plaintiff's medical care or intercept or destroy his medical requests.  (Defs.' Mot. for Summ. J. at

2  10-12.)

3          Fifth, counsel argues that plaintiff's allegations of a cover-up standing alone does

4  not support a constitutional claim.  Similarly, counsel argues that plaintiff's allegations of

5  fabrication of evidence standing alone does not support a constitutional claim.  (Defs.' Mot. for

6  Summ. J. at 13.)

7          Sixth, counsel argues that the defendants are entitled to qualified immunity.  In

8  this regard, counsel contends that plaintiff cannot show that defendants violated any clearly

9  established constitutional right.  Counsel asserts that there is in fact no evidence showing that any

10  defendants violated plaintiff's rights under the First, Eighth, and Fourteenth Amendments.

11  Moreover, counsel argues that a reasonable person in defendants' positions would have believed

12  his conduct was lawful.  As to the excessive force allegations, defendant Medina needed to gain

13  the compliance of a resisting inmate and used only the minimal force he believed necessary.  As

14  to the retaliation allegations, a reasonable person would believe that following Lieutenant Boyd's

15  order to search plaintiff's cell for contraband and using force in response to a resisting inmate

16  was lawful conduct.  (Defs.' Mot. for Summ. J. at 14-15.)

17          Seventh, defense counsel argues that the court should decline to exercise

18  supplemental jurisdiction over plaintiff's state law assault and battery claims.  Counsel contends

19  that the district court has discretion to dismiss the state law claims if the federal claims are

20  eliminated before trial.  (Defs.' Mot. for Summ. J. at 15-16.)

21          Finally, defense counsel argues that plaintiff's requests for injunctive relief are

22  moot.  Plaintiff requests a transfer from Folsom State Prison and an MRI or surgery for his

23  shoulder.  Since filing the complaint, however, plaintiff has been transferred to a different prison

24  and has received both an MRI and surgery for his shoulder.  (Defs.' Mot. for Summ. J. at 16.)

25  /////

26  /////

19

**ANALYSIS**

I.  Preliminary Matters

      A.  Plaintiff's Excessive Force Claim is Heck-Barred

        A prisoner may not recover damages under § 1983 for allegedly unconstitutional imprisonment, or for any other harm caused by actions whose unlawfulness would render the imprisonment invalid, unless he can prove that the conviction or other basis for confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  In this regard, the legality of a person's confinement is implicated where "in substance his damages may only be measured by that confinement."  Butterfield v. Bail, 120 F.3d 1023, 1025 (9th Cir. 1997).  See also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or its duration.");  Edwards v. Balisok, 520 U.S. 641, 648 (1997) (dismissing § 1983 action for declaratory relief and monetary damages because successful challenge to procedures used in disciplinary hearing would necessarily imply the invalidity of the punishment imposed).

        Here, plaintiff claims that defendant Medina used excessive force against him when defendants Medina and Walton carried out a cell search on November 5, 2004.  (Ex. 12.) As noted above, plaintiff was found guilty of resistive behavior and assessed 30-days loss of credit as a result of the struggle that occurred during this same cell search.  (Ex. 16.)  If plaintiff is successful in this action against defendant Medina on his excessive force claim, his success would necessarily imply the invalidity of his conviction for resistive behavior and loss of good time credits.  Plaintiff has not demonstrated that his conviction has been reversed, expunged, or

/////

1  otherwise invalidated.  Accordingly, plaintiff's excessive force claim against defendant Medina

2  is Heck-barred and should be dismissed.

3                      B.  Plaintiff's Requests for Injunctive Relief Are Moot

4          "Mootness is like standing, in that if it turns out that resolution of the issue

5  presented cannot really affect the plaintiff's rights, there is, generally speaking, no case or

6  controversy for the courts to adjudicate; no real relief can be awarded."  Smith v. Univ. of

7  Washington Law School, 233 F.3d 1188, 1193 (9th Cir. 2000). "Where the activities sought to be

8  enjoined already have occurred, and the . . . courts cannot undo what has already been done, the

9  action is moot, and must be dismissed."  Bernhardt v. County of Los Angeles, 279 F.3d 862, 871

10  (9th Cir. 2002).  See also Demery v. Arpaio, 378 F.3d 1020, 1025-26 (9th Cir. 2004) ("[A] suit

11  for injunctive relief is normally moot upon the termination of the conduct at issue[.]"); David v.

12  Giurbino, 488 F. Supp. 2d 1048, 1056 (S.D. Cal. 2007) (finding prisoner's claims moot where

13  the challenged regulation was no longer in force).  Moreover, when an inmate seeks injunctive or

14  declaratory relief concerning the prison where he is incarcerated, his claims for such relief

15  become moot when he is no longer subjected to those conditions.  See Weinstein v. Bradford,

16  423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

17          Here, when plaintiff filed his original complaint, he requested a transfer from

18  Folsom State Prison, an MRI, and an evaluation by a specialist and any medical treatment

19  recommended by the specialist.  Plaintiff has since transferred to San Quentin State Prison, seen

20  specialists, and had surgery to repair his recurring dislocated surgery.  (Exs. 14, 32-35.)

21  Accordingly, plaintiff's requests for injunctive relief are moot and should be dismissed.

22  II.  Plaintiff's Federal Claims Should Be Dismissed

23          The court is aware that on summary judgment it is not to weigh the evidence or

24  determine the truth of the matters asserted but must only determine whether there is a genuine

25  issue appropriately resolved by trial.  Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152

26  (9th Cir. 1997).  However, for any factual dispute to be genuine, there must be enough doubt for

1  a reasonable trier of fact to find for plaintiff in order to defeat defendants' summary judgment

2  motion.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  As noted above,

3  plaintiff has not filed any opposition to defendants' motion for summary judgment.  In this

4  regard, defendants' evidence in support of their motion is uncontroverted.

5         Based upon defendants' undisputed evidence, the court finds that there is no

6  genuine issue of material fact with respect to plaintiff's excessive force claim against defendant

7  Medina.  Defendant Medina did not use excessive force when he attempted to gain compliance

8  from plaintiff.  To the extent that defendant Medina used any force in carrying out his duties, it

9  was neither harmful enough to establish a constitutional violation nor carried out maliciously and

10  sadistically with the intent of causing harm.  Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298;

11  Whitley, 475 U.S. at 320-21.  Accordingly, defendant Medina is entitled to summary judgment

12  on plaintiff's excessive force claim.

13         Similarly, based upon defendants' undisputed evidence, the court finds that there

14  is no genuine issue of material fact with respect to plaintiff's retaliation claim against defendants

15  Boone, Manuel, Medina, Schievelbein, and Walton.  Lieutenant Boyd told defendants Medina

16  and Walton that plaintiff and his cellmate were believed to possibly have contraband in their cell

17  and ordered them to perform a cell search.  In this regard, defendants Medina and Walton

18  advanced a legitimate correctional goal when they carried out the search.  Moreover, until

19  plaintiff filed his complaint in this action, defendants Medina and Walton were not aware of his

20  filing or attempting to file a misconduct complaint pertaining to the questioning of his wife and

21  children.  (Exs. 1 & 2.)  Accordingly, they could not have conducted the cell search as a result of

22  plaintiff's protected conduct as plaintiff surmises.  In addition, defendants Boone, Manuel, and

23  Schievelbein were not present at plaintiff's cell and did not witness or participate in the cell

24  search.  Moreover, they too were unaware of plaintiff's filing or attempting to file a grievance

25  pertaining to the questioning of his wife and children.  (Exs. 3-5.)  Accordingly, defendants

26  /////

1    Boone, Manuel, Medina, Schievelbein, and Walton are entitled to summary judgment in their

2    favor with respect to plaintiff's retaliation claim.

3              Based upon defendants' undisputed evidence, the court also finds that there is no

4    genuine issue of material fact with respect to plaintiff's failure to protect claim to the extent that

5    he has asserted one against defendants Manuel and Schievelbein.  Although defendant Manuel

6    was in plaintiff's unit at the time of the cell search, he was not present at the cell and did not see

7    defendants Medina and Walton conduct the cell search.  (Ex. 4.)  Likewise, defendant

8    Schievelbein was not present at the cell and did not see defendants Medina and Walton conduct

9    the cell search.  Although defendant Schievelbein saw plaintiff escorted in handcuffs out of the

10   unit, defendant Schievelbein had just arrived at the entrance of the unit.  (Ex. 5.)  In this regard,

11   defendants Manuel and Schievelbein were not aware that plaintiff faced any risk of serious harm.

12   Nor did they disregard such a risk by failing to take reasonable steps to abate it.  Farmer, 511

13   U.S. at 847.  Accordingly, defendants Manuel and Schievelbein are entitled to summary

14   judgment on plaintiff's failure to protect claim.

15             Finally, based upon defendants' undisputed evidence, the court finds that there is

16   no genuine issue of material fact with respect to plaintiff's deliberate indifference claim against

17   defendants Boone, Manuel, Medina, Schievelbein, Shepherd, and Walton.  After a struggle such

18   as the one that occurred between defendant Medina and plaintiff, the prison's medical staff

19   attends to the inmate's medical needs, if any.  (Exs. 1 & 2.)  Defendants Boone, Manuel, Medina,

20   Schievelbein, Shepherd, and Walton never interfered with or obstructed plaintiff's medical care.

21   (Exs. 1-6.)  In addition, any delay plaintiff may have experienced in receiving medical care from

22   November 5, 2004, through November 18, 2004, did not change his ultimate diagnosis, treatment

23   or medical outcome.  A recurrent shoulder dislocation is diagnosed over time because it occurs

24   over time as the shoulder dislocates and relocates.  Once a shoulder relocates, the injury cannot

25   necessarily be detected on x-rays or by physical examination.  (Ex. 7.)  Thus, none of the

26   defendants responded to plaintiff's medical needs with deliberate indifference.  Farmer, 511 U.S.

834.  Accordingly, defendants Boone, Manuel, Medina, Schievelbein, Shepherd, and Walton are

entitled to summary judgment on plaintiff's deliberate indifference claim.

III.  Plaintiff's State Law Claims Should Be Dismissed

              The district court may decline to exercise supplemental jurisdiction over a claim

"if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  See also Binder v. Gillespie, 184 F.3d 1059, 1066 (9th Cir. 1999), cert. denied, 528

U.S. 1154 (2000) (citing Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998) and Voight

v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995)).  If these findings and recommendations are

adopted, the federal claims over which this court has original jurisdiction will be dismissed.  The

balance of relevant factors points toward declining to exercise jurisdiction over any remaining

state law claims.  See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir.

1994); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992).  In that event,

to the extent that plaintiff has asserted any state law claims they should be dismissed without

prejudice to refiling in state court.

## OTHER MATTERS

              As noted above, the Marshal was unable to effect service on defendants Latham

and Krlsuh.[2]  The court is authorized to dismiss claims against a defendant who has not been

served with process within 120 days after the filing of the complaint, unless the plaintiff shows

good cause for failing to effect service.  Fed. R. Civ. P. 4(m).  Here, the undersigned finds that

/////

/////

/////

/////

_____

        [2]  The Marshal was also unable to effect service on defendant Adams.  However, as noted above, the assigned district judge previously granted defendants' unenumerated Rule 12(b) motion to dismiss as to all of plaintiff's claims against defendant Adams.

1   plaintiff cannot show good cause for the failure to effect service on defendants Latham and

2   Krlsuh.[3]  Accordingly, these defendants should be dismissed.

3                                    **CONCLUSION**

4           For the reasons discussed above, IT IS RECOMMENDED that:

5           1.  Defendants' April 25, 2008 motion for summary judgment (Doc. No. 75) be

6   granted;

7           2.  The court decline to exercise supplemental jurisdiction over plaintiff's

8   remaining state law claims;

9           3.  Plaintiff's claims against defendants Latham and Krlsuh be dismissed without

10  prejudice.  See Fed. R. Civ. P. 4(m) and 41(b); and

11          4.  This action be closed.

12          These findings and recommendations will be submitted to the United States

13  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

14  fifteen days after being served with these findings and recommendations, any party may file and

15  serve written objections with the court.  A document containing objections should be titled

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

17  shall be filed and served within ten days after service of the objections.  The parties are advised

18  /////

19  /////

20  /////

21  /////

22  /////

23

24          [3]  Although plaintiff previously requested additional time to locate these defendants, the
    undersigned denied the request without prejudice until defendants' motion to dismiss had been
    ruled upon.  (Order filed May 8, 2006.)  Plaintiff later indicated in his September 10, 2007 status

25  report that he was using the discovery process to attempt to locate the unserved defendants.
    However, plaintiff never informed the court that he had located defendants Latham and Krlsuh

26  and never renewed his request for additional time to do so.

that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 20, 2009.

Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
thom1243.57

26